UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Deidre Sherell Jackson,                        File No. 20-cv-749 (ECT/TNL)

    Plaintiff,

v.                                             **OPINION AND ORDER**

Minnesota Department of Human Services,

    Defendant.

Deidre Sherell Jackson, *pro se*.

Kathleen M. Ghreichi, Minnesota Attorney General's Office, St. Paul, MN, for Defendant Minnesota Department of Human Services.

    Deidre Sherell Jackson claims that her employer, the Minnesota Department of Human Services ("DHS"), has discriminated against her based on her race and color, retaliated against her for complaining about discrimination, and violated her right to due process. DHS filed a motion to dismiss some, but not all, of Jackson's claims. DHS argues that three categories of claims should be dismissed: (1) all claims based on events occurring before April 19, 2019; (2) all color discrimination claims; and (3) all claims against the state of Minnesota itself, as opposed to DHS.

    DHS's motion will be granted in part and denied in part. First, Jackson waited too long to file a discrimination or retaliation claim based on a written reprimand that DHS gave her in February 2019, so any claims based on the reprimand will be dismissed with prejudice. It is too early to say whether any of Jackson's other claims are untimely, so no

other claims will be dismissed on that basis. Second, Jackson's color discrimination claims will be dismissed without prejudice, both because she did not raise them in the charge she filed with the Equal Employment Opportunity Commission ("EEOC") and because she has not alleged any facts to support them in her complaint. Third, it is not necessary to dismiss any claims against the state of Minnesota because Jackson does not name the state as a defendant.

I[1]

A

Jackson is an African American employee of the Minnesota Department of Human Services. Second Am. Compl. at 9 [ECF No. 53].[2] She begins her complaint by alleging broadly that discrimination "has always been present" at DHS but that it "became unbearable in 2018." *Id.* at 3 ¶ 5. Her factual allegations then revolve around a series of actions that DHS took against her between about December 2018 and the time she filed this lawsuit in March 2020. She believes that these actions, described below, were motivated by her race, her color, and her complaints concerning discrimination in the agency. *Id.* at 4–5 ¶ 9.

---

[1] In accordance with the standards governing a motion under Rule 12(b)(6), the facts are drawn entirely from Jackson's Second Amended Complaint and documents that it necessarily embraces. *See Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014).

[2] Jackson filed her Second Amended Complaint using this District's form employment discrimination complaint with additional pages of factual allegations attached. The form complaint and the additional pages contain separate series of numbered paragraphs. To minimize confusion, this opinion will cite both the page number and the paragraph number, if any.

*Reprimand for unapproved use of a state cell phone.* In December 2018, DHS informed Jackson that she was being investigated for unapproved use of a state-issued cell phone that led to an unusually large phone bill. *Id.* at 9 ¶ 1, Ex. A. When the investigation concluded, DHS sent Jackson a "written reprimand" in February 2019, informing her that she had violated several agency policies and that her "teleworking" and "State cell phone" privileges would be revoked. *Id.* at 9 ¶ 2, Ex. B. Shortly thereafter, Jackson received a letter stating that she needed to pay for the large cell phone bill she had allegedly incurred. *Id.*, Ex. C. Jackson pursued an internal grievance process to challenge the written reprimand. On April 5, 2019, after a "first step" hearing, DHS largely upheld its prior conclusions, but it issued a slightly amended version of the written reprimand. *Id.* at 9 ¶ 3, Exs. D, E. On May 1, after a second grievance hearing, DHS upheld the amended written reprimand. *Id.* at 10 ¶ 10, Ex. J.

*Investigation for insubordination.* On April 17, 2019, Jackson received a "Letter of Expectation" from DHS warning her that she "needed to improve her communication skills." *Id.* at 9 ¶ 4, Ex. F. Although the letter stated that it "should not be considered or perceived by [Jackson] or others as discipline," it required Jackson to attend a minimum of six coaching sessions "on effective and appropriate workplace communication style" and cautioned that failure to complete the sessions "could result in disciplinary action." *Id.*, Ex. F. After inquiring about the basis for the Letter of Expectation and receiving no response, Jackson "refused to go to coaching." *Id.* at 9–10 ¶¶ 7–8, Ex. G. This led DHS to inform her on April 30 that it was investigating her for insubordination. *Id.*, Ex. I. The Second Amended Complaint provides no details about this investigation, except to say that

3

its "outcome . . . was unsubstantiated." *Id.* at 10 ¶ 9.  DHS issued an amended Letter of Expectation on August 20, 2019, which "changed the directive from coaching to training classes." *Id.* at 10 ¶ 9, Ex. I.

*Suspension*.  Sometime in September 2019, Jackson filed a "discrimination/retaliation claim" in DHS's "internal Equal Opportunity Division." *Id.* at 10 ¶ 11.  Shortly thereafter, on October 21, 2019, DHS informed Jackson that it was investigating her for workplace misconduct related to a conversation she had with a subordinate employee at the end of August. *Id.* at 10 ¶ 13, Ex. K.  During the conversation in question, Jackson had allegedly spoken "with a loud and raised voice and adverse tone," which had caused "distraction and concern for the well-being" of the subordinate employee. *Id.*, Ex. N.  According to Jackson, the conversation may have been loud enough for others to hear, but "the subordinate did not feel threatened." *Id.* at 10 ¶¶ 12, 16–17, Exs., L, M.  Nonetheless, in a December 2019 letter, DHS informed Jackson of its intent to suspend her without pay for one working day and to require her to complete training programs on appropriate workplace behavior. *Id.*, Ex. N.  After a hearing,[3] DHS issued a revised suspension letter on January 7, 2020, indicating that in lieu of a one-day suspension, the agency would deduct eight hours from Jackson's vacation leave balance. *Id.* at 11 ¶ 25,

---

[3]     Jackson alleges that she was "denied her constitutional right to a Loudermill hearing" because no hearing was held before her suspension. *Id.* at 11 ¶¶ 19–20.  This is a reference to the Supreme Court's decision in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 547–48 (1985), which held that the Due Process Clause generally entitles tenure-protected public employees to a hearing before they are terminated.

4

Ex. P. DHS later upheld this decision, but Jackson is continuing to challenge it through the agency's internal grievance process. *Id.* at 11 ¶¶ 26–27, Ex. U.

*Lost promotion.* In November 2019, Jackson was a "final candidate for a promotional position." *Id.* at 11 ¶ 28. She did not receive the promotion, however, because DHS's human resources department "intentionally provided negative information [about her] to the hiring manager." *Id.* at 12 ¶ 30. Specifically, HR told the hiring manager that Jackson "had some things to clean-up and owed the state $7[,]000.00," which was apparently a reference to the large cell-phone bill for which the agency had previously reprimanded her. *Id.* at 11–12 ¶ 29; *see id.* at 12 ¶¶ 31–32, Exs. Q, R.

*Denial of telework arrangement.* DHS has also denied Jackson's requests to work from home "[s]ince February 2019," even though it allowed employees of other races, including a "Native-American male supervisor," to work from home "regardless of their work performance or assignments." *Id.* at 12 ¶¶ 33–34. Jackson attached one specific email thread, dated in September 2019, in which a supervisor denied her request to work from home on a particular day. *Id.*, Ex. S.

*Interference with discipline of a subordinate.* Finally, Jackson claims that, in September 2019, DHS interfered with her ability to discipline one of her subordinate employees. The employee in question had "attendance issues," and Jackson hoped to address those issues by sending the employee a "Letter of Expectation." *Id.* at 12 ¶ 35. Although Jackson "had the proper evidence to show [the] subordinate[']s attendance was an issue," DHS would not allow Jackson to send the letter. *Id.* at 12 ¶ 35, Ex. T.

B

Jackson began pursuing her claims by filing a charge of discrimination with the EEOC on February 13, 2020. *See* Passe Decl., Ex. 1 [ECF No. 17-1].[4] According to the charge, Jackson had experienced "continuing" discrimination since February 1, 2019, "because of [her] race/Black and/or in retaliation for complaining about discrimination." *Id.* at 1. In a Dismissal and Notice of Rights dated February 18, 2020, the EEOC stated that it was "unable to conclude that the information obtained" in its investigation "establishe[d] violations of the [relevant] statutes." Second Am. Compl. at 7.

Jackson then filed a complaint in federal court in March 2020. ECF No. 1. DHS moved to dismiss for insufficient service of process and separately moved for a more definite statement of Jackson's claims. ECF Nos. 13, 28. That motion was granted in part, and Jackson was required to file and properly serve an amended complaint that cured specified formatting defects. ECF No. 33 at 7. After Jackson filed her amended complaint,

---

[4] Jackson alleges that she filed her charge of discrimination on January 27, 2020. Second Am. Compl. at 3 ¶ 6. The EEOC charge itself, which DHS has filed, shows that Jackson "[d]igitally signed"—and therefore presumably filed—the charge on February 13, 2020. Passe Decl., Ex. 1 at 1. An EEOC charge is a "public record" that a court may consider without converting a motion to dismiss into one for summary judgment, *Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011), and a court does not need to accept the truth of an allegation when a document embraced by the pleadings directly contradicts that allegation, *see Kebasso v. BAC Home Loans Servicing, LP*, 813 F. Supp. 2d 1104, 1110 (D. Minn. 2011); *see also Scott v. Performance Contractors, Inc.*, 166 F.R.D. 372, 374 (M.D. La. 1996) (holding that the date on an EEOC charge controlled over the allegations in a plaintiff's complaint). Importantly, the identification number on the charge that DHS filed matches the number on the right-to-sue letter that Jackson attached to the Second Amended Complaint, *compare* Passe Decl., Ex. 1 at 1, *with* Second Am. Compl. at 7, and Jackson does not dispute the charge's authenticity in her briefing.

DHS once again moved to dismiss for insufficient service of process. ECF No. 38. Although service was improper, DHS's motion was denied and Jackson was again ordered to properly serve her complaint. ECF No. 52.

Jackson subsequently filed her Second Amended Complaint, which has become the operative complaint in this case.[5] Jackson has not identified all of her claims by name or under separately labeled counts. Keeping in mind the duty to construe pro se filings liberally, *see Devine v. Walker*, 984 F.3d 605, 607 (8th Cir. 2020), it appears that she asserts the following claims: (1) discrimination based on race in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; *see* Second Am. Compl. at p. 4 ¶ 9, p. 12 ¶ 36; (2) discrimination based on color in violation of Title VII, *see* Second Am. Compl. at pp. 4–5 ¶ 9, p. 12 ¶ 36; (3) retaliation in violation of Title VII, *see id.* at p. 4 ¶ 8, p. 12 ¶ 36; and (4) violation of her right to procedural due process, *see id.* at p. 11 ¶¶ 19–20, pp. 11–12 ¶ 36.[6] DHS admits that Jackson properly served the Second Amended Complaint, but it has moved to dismiss

---

[5] In its reply brief, DHS states in a footnote that the Second Amended Complaint was improperly filed. *See* Def.'s Reply Mem. at 4 n.2 [ECF No. 63]. A plaintiff may amend her pleading "once as a matter of course" within either 21 days after serving the pleading or 21 days after service of a responsive pleading or motion, whichever is earlier. Fed. R. Civ. P. 15(a)(1). All other amendments require "the opposing party's written consent or the court's leave." *Id.* 15(a)(2). It is not clear whether Jackson's First Amended Complaint, which was prompted by a judicial order, *see* ECF No. 33 at 7, was an amendment "as a matter of course" such that it was improper for her to file the Second Amended Complaint. Regardless, DHS notes that the First and Second Amended Complaints are substantively "identical" and "does not object" to the Second Amended Complaint. Def.'s Mem. at 3 n.1 [ECF No. 57]; Def.'s Reply Mem. at 4 n.2. The Second Amended Complaint will therefore be treated as the operative complaint.

[6] As noted below, it is unclear whether Jackson also intended to raise a Title VII hostile-work-environment claim. The pretrial conference, *see* Fed. R. Civ. P. 16; ECF No. 60, will give the Parties an opportunity to clarify which claims have been asserted.

Jackson's claims in part for failure to state a claim upon which relief can be granted. ECF No. 54; *see* Fed. R. Civ. P. 12(b)(6).

II

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

DHS raises three issues in its motion. First, it argues that all claims that "ar[ose] prior to April 19, 2019" are untimely. Def's Mem. at 4–5. Second, it argues that Jackson failed to exhaust administrative remedies on her claims of color discrimination and, alternatively, that she has not plausibly alleged such claims. *Id.* at 5–9. Third, it argues that the Second Amended Complaint improperly seeks relief directly from the state of Minnesota. *Id.* at 9–11. These arguments will be addressed in turn.

A

Start with the statute of limitations. A Title VII plaintiff in Minnesota must generally file a charge of discrimination with the EEOC or the Minnesota Department of

Human Rights "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see D.W. v. Radisson Plaza Hotel Rochester*, 958 F. Supp. 1368, 1373 (D. Minn. 1997). According to DHS, Jackson cannot recover for any acts that occurred prior to April 19, 2019—300 days before she filed her charge of discrimination on February 13, 2020. Def.'s Mem. at 4–5. Jackson does not dispute this date calculation, but she argues that if she had filed her claim any earlier, she would not have had sufficient time to "establish a pattern of discrimination, retaliation, and loss of promotional opportunity." Pl.'s Mem. at 1 [ECF No. 61]; Pl.'s Surreply Mem. at 1 [ECF No. 66].[7]

Before addressing these arguments, it is worth noting that "[a] statute of limitations is an affirmative defense that defendants bear the burden to plead and prove." *Joseph v. Wal-Mart Corp.*, No. 20-cv-1255 (ECT/TNL), 2020 WL 5995261, at *2 (D. Minn. Oct. 9, 2020) (internal quotation marks and citation omitted); *see John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008)). This means that a statute of limitations "is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." *Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008) (citing *Varner v. Peterson Farms*, 371 F.3d 1011, 1017–18 (8th Cir. 2004)). Put differently, dismissal on this ground is only appropriate if the complaint—and materials embraced by the complaint—"clearly indicate[]" that a claim is untimely. 5B Arthur R. Miller, Mary K. Kane, and A. Benjamin

---

[7]   Local Rule 7.1(c) does not give a responding party the opportunity to file a surreply to a movant's reply memorandum, and Jackson filed her surreply without seeking permission to do so. Nonetheless, the surreply has been reviewed and considered.

Spencer, *Federal Practice and Procedure* § 1357 (3d ed. Oct. 2020 Update). If there are unresolved factual questions concerning a claim's timeliness, the claim should proceed. *See, e.g.*, *In re EpiPen Direct Purchaser Litig.*, No. 20-cv-827 (ECT/TNL), 2021 WL 147166, at *6 (D. Minn. Jan. 15, 2021).

Deciding whether a claim is untimely requires a court to determine when the clock began to run on the statute of limitations. Under Title VII, the clock starts on the date that "the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). If the challenged employment practice is a "discrete retaliatory or discriminatory act," the act "'occurred' on the day that it 'happened.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). This means the "date on which the adverse employment action [was] communicated to the employee." *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1032 (8th Cir. 2005); *see also Hutson v. Wells Dairy, Inc.*, 578 F.3d 823, 826 (8th Cir. 2009). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 114. Once the limitations period has run on a particular act, any claim based on that act is "no longer actionable." *Morgan*, 536 U.S. at 114–15.

Most of the employment actions described in the Second Amended Complaint occurred well after April 19, 2019. Jackson did not receive notice of her suspension until at least December 2019. Second Am. Compl., Ex. N. DHS declined to promote her in November 2019. *Id.* at 11–12 ¶¶ 28, 30. It stopped her from disciplining a subordinate in September 2019. *Id.* at 12 ¶ 35, Ex. T. And although Jackson alleges that DHS denied her requests to telework "[s]ince February 2019," she only identifies one specific instance of such a denial, and it occurred in September 2019. *Id.* at 12 ¶¶ 33–34, Ex. S. Whether or

10

not Jackson can ultimately succeed on her discrimination or retaliation claims based on these actions, the Second Amended Complaint does not clearly indicate that those claims are untimely.

The insubordination investigation against Jackson presents a closer question. DHS seems to argue that any claim based on this employment action is untimely because the relevant action "occurred" when Jackson received a Letter of Expectation on April 17, 2019. Def.'s Mem. at 4–5. To be sure, if the Letter of Expectation is the alleged "discrete discriminatory act," then any claim based on the letter would be untimely because it "occurred" before April 19, 2019. But it is not clear from the Second Amended Complaint and accompanying materials that the action Jackson challenges "occurred" on the date of the letter. *Morgan*, 536 U.S. at 110. On one hand, the letter arguably affected her terms of employment right away by requiring her to attend coaching sessions on "effective and appropriate workplace communication style." Second Am. Compl., Ex. F. It also says, however, that it "should not be considered or perceived by [Jackson] or others as discipline." *Id.* Jackson did not refuse to attend the coaching sessions until after April 19, and DHS did not inform her of an insubordination investigation until April 30. *Id.*, Ex. H. Moreover, the complaint refers to an "unsubstantiated" outcome of the investigation, and DHS issued an amended Letter of Expectation in August 2019. This series of events does not "clearly indicate[]" when the challenged employment action occurred, so it would be premature to say that a claim based on that action is untimely.

The result is different for any discrimination or retaliation claims based on the written reprimand that Jackson received for unapproved use of a state cell phone. DHS

11

issued the reprimand on February 15, 2019—more than two months before April 19, 2019. *Id.* at 9 ¶ 2, Ex. B. The letter definitively concluded that Jackson had violated DHS policies and informed her that her teleworking and cell-phone privileges would be revoked. *Id.* Nothing in the complaint or accompanying materials suggests that the reprimand was tentative or nonfinal. Jackson suggests in her brief that the reprimand was part of a "pattern" of discrimination that stretched into the limitations period. Pl.'s Mem. at 1. But the Supreme Court has made clear that this type of "continuing violation" theory does not apply to claims based on discrete acts like the reprimand at issue here. *See Morgan*, 536 U.S. at 113–14; *see also Wedow v. City of Kansas City*, 442 F.3d 661, 670 (8th Cir. 2006); *Mems v. City of St. Paul, Dep't of Fire & Safety Servs.*, 327 F.3d 771, 785 (8th Cir. 2003) (describing a "reprimand" as a "discrete event[] . . . constituting its own unlawful employment practice"). It also does not make a difference that Jackson challenged the reprimand in an internal grievance process that extended into the limitations period. That DHS might have decided to revise its reprimand does not change the fact that the reprimand was final when it happened in February. *See Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO, Local 790 v. Robbins & Meyers, Inc.*, 429 U.S. 229, 234–35 (1976) (upholding dismissal and rejecting argument that an employee's termination "occurred" only after the conclusion of labor union's "grievance-arbitration procedures"); *see also Delaware State College v. Ricks*, 449 U.S. 250, 261 (1980). The bottom line is that any Title VII discrimination or retaliation claims based on Jackson's February 2019 written reprimand are untimely, and they will accordingly be dismissed with prejudice. *See Bailey v. Metro. Council*, No. 19-cv-1024 (DWF/TNL), 2020 WL 1934428, at *1–2 (D. Minn. Apr. 22,

2020) (dismissing untimely Title VII claims with prejudice); *cf. Davenport v. Kenney*, 100 F. App'x 590, 591–92 (8th Cir. 2004) (modifying the dismissal of an untimely petition for habeas corpus to be with prejudice). It is too early to say whether Jackson's other claims are untimely, so no other claims will be dismissed on that basis.[8]

B

Next, DHS argues that Jackson failed to exhaust or plausibly allege her color discrimination claims. Def.'s Mem. at 6–9. As already noted, "Title VII establishes an administrative procedure which a complaining employee must follow before filing a lawsuit in federal court." *Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 800 (8th Cir. 2011) (internal quotation marks and citation omitted). In order to sue, a Title VII plaintiff must first "exhaust[]" her administrative remedies by filing a charge with the EEOC that "give[s] notice of all claims of discrimination" that she intends to assert. *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 630–31 (8th Cir. 2000) (citation omitted). "[A] plaintiff may seek relief [in court] for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Id.* (internal quotation marks and citation omitted).

---

[8] This opinion does not address the timeliness of any Title VII hostile-work-environment claim that Jackson may have intended to assert. In contrast to claims based on "discrete retaliatory or discriminatory acts," which are untimely if the act occurred outside the limitations period, a hostile-work-environment claim is timely as long as the plaintiff files a charge within 300 days "of any act that is part of the hostile work environment. *Morgan*, 536 U.S. at 118; *see id.* at 115 (explaining that "[h]ostile environment claims are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct"). The Parties do not address a hostile-work-environment claim in their briefing, but as noted above, the Rule 16 conference will provide an opportunity to clarify whether Jackson asserts one.

Failure to exhaust administrative remedies, like the statute of limitations, "is an affirmative defense that defendants bear the burden to plead and prove." *Roiger v. Veterans Affairs Health Care Sys.*, No. 18-cv-591 (ECT/TNL), 2019 WL 572655, at *7 (D. Minn. Feb. 12, 2019); *see also, e.g.*, *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 989–90 (8th Cir. 2011) (addressing exhaustion at the summary judgment stage). Nonetheless, dismissal under Rule 12(b)(6) is appropriate if the plaintiff's EEOC charge shows that the plaintiff has not exhausted a claim. *See Brooks*, 655 F.3d at 801; *see also Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851–52 (8th Cir. 2012); *Blakley*, 648 F.3d at 931 (explaining that courts may consider an EEOC charge at the pleading stage without converting a motion to dismiss into one for summary judgment).

When deciding whether a plaintiff has exhausted her administrative remedies, the Eighth Circuit "liberally construe[s]" the allegations in the EEOC charge—particularly when a plaintiff is *pro se*—but it recognizes "a difference between liberally reading a claim which lacks specificity, and inventing . . . a claim which simply was not made." *Sellers v. Deere & Co.*, 791 F.3d 938, 943 (8th Cir. 2015) (citation omitted); *see Shannon v. Ford Motor Co.*, 72 F.3d 678, 685 (8th Cir. 1996); *see also Wedow*, 442 F.3d at 672–73 (explaining that the Eighth Circuit has "considerably narrowed [its] view" over time of what it means for a plaintiff's claims to be "like or reasonably related to" those in the EEOC charge). For example, "retaliation claims are not reasonably related to underlying discrimination claims." *Wallin v. Minn. Dep't of Corr.*, 153 F.3d 681, 688 (8th Cir. 1998); *see Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004), *abrogated on other grounds*, *Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011). And in

14

order to preserve a claim for discrimination based on a particular characteristic—for example, race—a plaintiff must typically check the box for that characteristic on the EEOC charge, at least when the charge's factual allegations would not reasonably put the EEOC on notice of potential discrimination based on the characteristic. *See Brooks*, 655 F.3d at 801 (affirming the dismissal of age discrimination and retaliation claims as unexhausted where the plaintiff had only checked the boxes for race and sex discrimination in her EEOC charge).

In her EEOC charge, Jackson checked the boxes for discrimination based on race and retaliation, but not the box for discrimination based on color. *See* Passe Decl., Ex. 1 at 1. In the narrative section of the charge, Jackson alleged that she had "been discriminated against because of [her] race/Black and/or in retaliation for complaining about discrimination[.]" *Id.* The question, then, is whether these allegations of race discrimination are "like or reasonably related to" claims for color discrimination. The Eighth Circuit has not addressed this question, but other courts have drawn a clear distinction between "race" and "color" for these purposes. While race discrimination is directed at an individual's membership in a racial group, "[c]olor discrimination arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African-American individual is discriminated against in favor of a light-colored African-American individual." *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 n.5 (4th Cir. 2002); *see also Cooper v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 742 F. Supp. 2d 941, 950–51 (W.D. Tenn. 2010). Consistent with this distinction, numerous courts have held that a plaintiff who only alleges race discrimination in an EEOC

charge has not exhausted a claim for color discrimination. *See, e.g.*, *Morgan v. Freightliner of Ariz., LLC*, No. CIV 16-498-TUC-CKJ, 2017 WL 2423491, at *5–7 (D. Ariz. June 5, 2017); *Gill v. Bank of Am. Corp.*, No. 2:15-cv-319-FtM-38CM, 2015 WL 4349935, at *4 (M.D. Fla. July 14, 2015); *Laws v. Norfolk S. Corp.*, No. 4:15-CV-924-CEJ, 2015 WL 5886069, at *2–3 (E.D. Mo. Oct. 8, 2015); *Richardson v. HRHH Gaming Senior Mezz, LLC*, 99 F. Supp. 3d 1267, 1273–74 (D. Nev. 2015); *Cooper*, 742 F. Supp. 2d at 950–51; *Moore v. Dolgencorp, Inc.*, No. 1:05-CV-107, 2006 WL 2701058, at *3–4 (W.D. Mich. Sept. 19, 2006). As noted above, Jackson did not check the "color" box on her EEOC charge and the charge is "devoid of allegations based on the pigmentation, complexion, hue, shade, or tone of [her] skin." *Gill*, 2015 WL 4349935, at *4. To construe the charge as alleging color discrimination under these circumstances would be to "invent[] . . . a claim which simply was not made." *Sellers*, 791 F.3d at 943 (citation omitted).

If Jackson had exhausted her color discrimination claims, they would still be dismissed because she has not plausibly alleged the claims in her Second Amended Complaint. *See Seabrook v. Ind. Sch. Dist. #535*, No. 16-cv-2245 (DSD/BRT), 2017 WL 685102, at *4 (D. Minn. Feb. 21, 2017). Jackson identifies herself as a "female African American employee" and as a "black woman," and she alleges that she was treated less favorably than a "Native-American male supervisor." Second Am. Compl. at 9, 12 ¶ 34, 13 ¶ 37. These allegations may support her race discrimination claims, but no facts plausibly link any discrimination to the "particular hue of her skin." *Williams v. Alhambra Sch. Dis. No. 68*, 234 F. Supp. 3d 971, 981 (D. Ariz. 2017); *see also Hicks v. C.P. Squires Elementary Sch.*, No. 2:19-cv-01665-GMN-BNW, 2021 WL 199716, at *3 (D. Nev. Jan.

20, 2021) (report and recommendation); *Griffin v. Delta Tech. Coll.*, No. 2:17-cv-02055-SHM-egb, 2017 WL 9477758, at *2 (W.D. Tenn. Sept. 22, 2017).

DHS requests that the color discrimination claims be dismissed with prejudice, *see* Def.'s Mem. at 11, but they will be dismissed without prejudice for two reasons. First, dismissals for failure to exhaust administrative remedies should generally be without prejudice, even if the claims may ultimately be untimely. *See Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1008 (7th Cir. 2019). Second, although Jackson also has not alleged facts to support her color discrimination claims, most of her other claims will proceed into discovery. If discovery reveals information that could support a color discrimination claim, Jackson will have an opportunity to pursue it if she believes it is timely. *See Washington v. Craane*, No. 18-cv-1464 (DWF/TNL), 2019 WL 2147062, at *5 (D. Minn. Apr. 18, 2019), *report and recommendation adopted*, 2019 WL 2142499 (D. Minn. May 16, 2019).

C

DHS's final argument is that any claims against the state of Minnesota "as a defendant in addition to or instead of DHS" must be dismissed because the state is "not a proper party" and because Jackson did not exhaust any claims against the state as a separate entity. Def.'s Mem. at 9–11. This argument rests on an incorrect premise; considered as a whole, the Second Amended Complaint does not name the state of Minnesota as a Defendant. The complaint's case caption and its "Parties" section lists only DHS.[9] Second

---

[9]    As DHS points out, the "Parties" section of the Second Amended Complaint lists DHS as a "Plaintiff" and leaves the spot for "[D]efendants" blank. *See* Second Am. Compl. at 1–2. This appears to be nothing more than a clerical error.

17

Am. Compl. at 1. Similarly, Jackson's EEOC charge lists DHS as her "Employer." Passe Decl., Ex. 1. To be sure, in her factual allegations, Jackson stated in passing that she was an "employee of the State of Minnesota" and was "filing an Employment Discrimination complaint against the State of Minnesota," Second Am. Compl. at 9. Given these allegations, it was reasonable for DHS to wonder whether Jackson sought relief from the state as a separate entity. In her briefing, however, Jackson clarified that she "is suing the Department of Human Services," Pl.'s Mem. at 2; *see also* Pl.'s Surreply Mem. at 2. Construing the Second Amended Complaint with this context, it is clear that Jackson asserts no claims against the state of Minnesota. This portion of DHS's motion will accordingly be denied as moot.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS ORDERED THAT** Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 54] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The motion is **GRANTED** to the extent it seeks dismissal of Jackson's Title VII discrimination and retaliation claims arising out of the February 2019 written reprimand. Those claims are **DISMISSED WITH PREJUDICE**.

2. The motion is **GRANTED** to the extent it seeks dismissal of Jackson's Title VII color discrimination claims. Those claims are **DISMISSED WITHOUT PREJUDICE**.

3. The motion is **DENIED AS MOOT** to the extent it seeks dismissal of claims against the state of Minnesota.

    4.       The motion is **DENIED** in all other respects.

Dated: March 23, 2021                                    s/ Eric C. Tostrud
                                                                          Eric C. Tostrud
                                                                          United States District Court