# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Deidre Sherell Jackson,                              Case No. 20-cv-749 (KMM/TNL)

        Plaintiff,

v.                                                                    **ORDER**

Minnesota Department of Human
Services,

        Defendant.

Deidre Sherell Jackson, 1720 Woodland Lane, Maplewood, MN 55109 (pro se
Plaintiff); and

Kathleen M. Ghreichi, Assistant Attorney General, Minnesota Attorney General's
Office, 445 Minnesota Street, Suite 1400, St. Paul, MN 55101 (for Defendant).

## I. INTRODUCTION

This matter comes before the Court on pro se Plaintiff Deidre Sherell Jackson's
"Motion to Compel," ECF No. 94; "Proposed Motion to Compel," ECF No. 98; and
"Motion of Compiling with Complying Requests," ECF No. 108.  The Court has taken
these matters under advisement, on the papers, without a hearing.  *See* D. Minn. LR 7.1(b).

## II. BACKGROUND

By Second Amended Complaint, Plaintiff "claims that her employer, [Defendant]
Minnesota Department of Human Services . . . , has discriminated against her based on her
race and color, retaliated against her for complaining about discrimination, and violated
her right to due process."  *Jackson v. Minn. Dep't of Human Servs.*, No. 20-cv-749

(ECT/TNL), 2021 WL 1111075, at *1 (D. Minn. Mar. 23, 2021).  The Second Amended

Complaint was previously construed to contain "the following claims: (1) discrimination

based on race in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; (2) discrimination based

on color in violation of Title VII; (3) retaliation in violation of Title VII; and (4) violation

of [Plaintiff's] right to procedural due process." *Id.* at *3 (citations omitted).  Plaintiff's

Title VII claims for discrimination and retaliation "arising out of [a] February 2019 written

reprimand" related to "unapproved use of a state cell phone" were previously dismissed

with prejudice as untimely. *Id.* at *5, 8.  Plaintiff's Title VII claims for color discrimination

(as distinguished from racial discrimination) were also previously dismissed without

prejudice for failure to exhaust administrative remedies and failure to state a claim. *Id.* at

*6-8.

### III. MOTION TO COMPEL[1]

Plaintiff moves to compel responses to seven interrogatories and two document

requests.  The Court has broad discretion in handling pretrial procedure and discovery.

*See, e.g.*, *Hill v. Sw. Energy Co.*, 858 F.3d 481, 484 (8th Cir. 2017) ("A district court has

very wide discretion in handling pretrial discovery . . . ." (quoting *United States ex rel.*

*Kraxberger v. Kansas City Power & Light Co.*, 756 F.3d 1075, 1082 (8th Cir. 2014));

*Solutran, Inc. v. U.S. Bancorp*, No. 13-cv-2637 (SRN/BRT), 2016 WL 7377099, at *2 (D.

---

[1] Plaintiff's Motion to Compel and Proposed Motion to Compel are essentially duplicate filings.  *Compare* ECF No. 94 *with* ECF No. 98.  The Court interprets Plaintiff's Proposed Motion to Compel as an effort to comply with the Court's directive that she file a proposed order in connection with her Motion to Compel as required under Local Rule 7.1(b)(1).  *See* ECF No. 95 at 2.  Given the nature of the filings, the Court will administratively terminate the Proposed Motion to Compel as it is not in fact a new motion but a proposed order in connection with the previously filed Motion to Compel.

Minn. Dec. 20, 2016) ("Further, magistrate judges 'are afforded wide discretion in handling discovery matters and are free to use and control pretrial procedure in furtherance of the orderly administration of justice.'" (internal quotation marks omitted) (quoting *Favors v. Hoover*, No. 13-cv-428 (JRT/LIB), 2013 WL 6511851, at *3 n.3 (D. Minn. Dec. 12, 2013)).

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Some threshold showing of relevance must be made[, however,] before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Further, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018) (quoting Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment); *see also Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) ("[E]ven if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." (quotation omitted)). "[A] court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case." *Vallejo*, 903 F.3d at 742 (quotation omitted); *see* Fed. R. Civ. P. 26(b)(2)(C)(iii). Considerations bearing on proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

3

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1); *see also Vallejo*, 903 F.3d 742-43.

### A. Interrogatories

"An interrogatory may relate to any matter that may be inquired into under Rule 26(b)."  Fed. R. Civ. P. 33(a)(2).  "Each interrogatory must, to the extent that it is not objected to, be answered separately and fully in writing under oath."  Fed. R. Civ. P. 33(b)(3).

### 1. Interrogatory Nos. 2 and 5

Interrogatory Nos. 2 and 5 seek information regarding events that led to Plaintiff's suspension in December 2019.  Pl.'s Mot. to Compel at 2-3, ECF No. 94.  Defendant objected to these interrogatories on the basis that "Plaintiff released all claims and disputes relating to her suspension in a fully executed Settlement and Release that went into effect October 21, 2020."  Pl.'s Mot. to Compel at 2; *see* Pl.'s Mot. to Compel at 3; *see also* Def.'s Mem. in Opp'n at 3, ECF No. 101.

Among the allegations in the Second Amended Complaint, Plaintiff describes a series of events stemming from a conversation she had with a subordinate employee around early September 2019, in which another employee voiced concern over the volume of Plaintiff's voice.  *See* Second Am. Compl. at 10-11, 36-39, ECF No. 53.  Plaintiff received a one-day suspension in December 2019 as a result.  *See* Second Am. Compl. at 11, 40-41. Plaintiff alleges that she did not receive certain procedural protections and grieved her suspension.  *See* Second Am. Compl. at 11; *see also* Second Am. Compl. at 42-47; Ex. A

4

at 1 to Decl. of Kathleen M. Ghreichi, ECF No. 103-1.

In October 2020, Plaintiff entered into a Settlement and Release Agreement with Defendant related to the one-day suspension. *See generally* Ex. A to Ghreichi Decl. The Settlement and Release Agreement states, among other things, that "the parties desire to finally and forever resolve all grievances and disputes regarding this matter" and "[a]ll claims and/or disputes relating to the matters underlying this grievance are released upon execution of this Settlement and Release." Ex. A at 1 to Ghreichi Decl. The Settlement and Release Agreement further stated that "[n]othing in this Settlement and Release shall preclude [Defendant] from properly responding to a lawful request made pursuant to the MN Data Practices Act." Ex. A at 1 to Ghreichi Decl. The Settlement and Release Agreement is signed by Plaintiff, signifying that she "understand[s] and voluntarily agree[s] to and accept[s] the terms of this Settlement and Release Agreement." Ex. A at 2 to Ghreichi Decl.

Plaintiff does not dispute the existence of the Settlement and Release Agreement. Rather, she asserts that the Settlement and Release Agreement "did not excuse or release the Defendant from providing legal documents for this lawsuit," referencing the clause concerning the Minnesota Government Data Practices Act ("MGDPA"), Minn. Stat. § 13.01 *et seq.* Pl.'s Mot. to Compel at 3; *see also* Pl.'s Mot. to Compel at 3-4. *See generally, e.g.*, Minn. Stat. § 13.03, subd. 3 (request for access to data). Plaintiff asserts that, because her "'suspension' was an event that happened, the Defendant is obligated to answer the question in detail" under the Federal Rules of Civil Procedure. Pl.'s Mot. to Compel at 3; *see also* Pl.'s Mot. to Compel at 3-4.

Defendant maintains that the execution of the Settlement and Release Agreement means the events leading to Plaintiff's suspension in December 2019 "are no longer relevant to the claims in this lawsuit." Def.'s Mem. in Opp'n at 3. Defendant additionally asserts that Interrogatory Nos. 2 and 5 are not equivalent to a request made under the MGDPA and, in any event, Plaintiff has "equal access" to the information because Defendant "has already produced to Plaintiff a copy of an independent investigative report documenting witness accounts of Plaintiff's conduct that led to the suspension." Def.'s Mem. in Opp'n at 4.

Events related to Plaintiff's suspension in December 2019 form a significant portion of the factual allegations underlying Plaintiff's remaining claims for discrimination and retaliation. Interrogatory Nos. 2 and 5 therefore seek relevant information within the scope of Rule 26(b)(1). *See Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021) ("[T]he scope of discovery is intended to focus on the actual claims or defenses that are at issue in the litigation."). Defendant's contention that the Settlement and Release Agreement bars Plaintiff's discrimination and retaliation claims based on her December 2019 suspension goes not to the relevancy of the information sought, but to the merits of the claims themselves. Accepting Defendant's argument that the existence of the Settlement and Release Agreement precludes any and all discovery regarding Plaintiff's suspension in December 2019 would essentially amount to rendering a dispositive ruling on those claims.

Therefore, the Court will grant Plaintiff's motion with respect to Interrogatory Nos. 2 and 5.

### 2. Interrogatory No. 6

Interrogatory No. 6 seeks information regarding any complaints made regarding "Plaintiff's ability to do the work assigned," including the race and ethnicity of the complainant, and "a list of the overall rating of each of . . . Plaintiff's annual performance reviews." Pl.'s Mot. to Compel at 4.

Among other objections, Defendant objected to providing the race and ethnicity of each complainant on grounds that such information is private personnel data and, in any event, is not maintained in connection with the identity of a complainant. Pl.'s Mot. to Compel at 4. Subject to its objections, Defendant responded:

> Generally, Defendant has received complaints about Plaintiff in her employment with Defendant. These complaints include but are not limited to: communications issues noted in Plaintiff's 2018 performance review; Plaintiff's February 2019 written reprimand based on data plan overages associated with her state cell phone; and issues in 2019 regarding Defendant's Respectful Workplace policy. Plaintiff's annual performance reviews include her overall rating and speak for themselves.

Pl.'s Mot. to Compel at 4.

Plaintiff asserts that Defendant "did not cite a specific complaint regarding [her] ability to do the work assigned for any time period (either duration of the employment, or timeframe of this case)"; "did not cite any individuals who made or initiated any complaints"; and did not provide "race identification" information despite such information being provided elsewhere in other interrogatory responses. Pl.'s Mot. to Compel at 4-5. Defendant responds that while Plaintiff "does not appear to view documentation of [her] communication issues as relevant to her 'ability to do the work,'"

7

communication skills are "clearly part of Plaintiff's work" alongside "technical skills and specialized knowledge concerning the provision of adult mental health services."  Def.'s Mem. in Opp'n at 5.  Defendant additionally responds that, in response to another discovery request seeking investigative reports and findings of which Plaintiff was the subject, it "has already produced an independent investigative report documenting witness accounts concerning Plaintiff's Respectful Workplace policy issue in 2019 as well as an Internal Investigative Report documenting Plaintiff's communication issues in 2018."  Def.'s Mem. in Opp'n at 5 (citations omitted).  Defendant has also "produced Plaintiff's performance reviews from 2014 to [the] present, a number of which document communication concerns."  Def.'s Mem. in Opp'n at 5.

Plaintiff's motion will be granted in part with respect to Interrogatory No. 6. Defendant shall supplement its answer to Interrogatory No. 6 to identify those individuals who made complaints in connection with issues in 2019 regarding Defendant's Respectful Workplace policy.[2]  In addition, to the extent it has not done so already, Defendant shall supplement its response to Interrogatory No. 6 to specify the Bates numbers of the produced annual performance reviews for Plaintiff from which a list of her overall ratings can be derived.  *See* Fed. R. Civ. P. 33(d)(1) (permitting party to answer interrogatory by "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could"

---

[2] The Court notes that Defendant has not expressed any concern regarding Plaintiff having access to the names of any complaining individuals and, as stated above, "has already produced an independent investigative report documenting witness accounts concerning Plaintiff's Respectful Workplace policy issue in 2019."  Def.'s Mem. in Opp'n at 5.

when "the answer to [the] interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records . . . and . . . burden of deriving or ascertaining the answer will be substantially the same for either party").

Plaintiff's motion is otherwise denied with respect to Interrogatory No. 6. Plaintiff's motion is denied to the extent she characterizes Defendant's response as being non-responsive to her inquiry concerning work-related complaints. Plaintiff's motion is likewise denied as to the race and ethnicity of the complainants. Plaintiff has not sufficiently articulated the relevance of the information to her claims. *See* Fed. R. Civ. P. 26(b)(1), (2)(C)(iii). Plaintiff's motion is further denied as to the identity of any complainants concerning communications issues noted in Plaintiff's 2018 performance review and Plaintiff's February 2019 written reprimand based on data plan overages associated with her state cell phone. As best as this Court is able to tell, the claims in the Second Amended Complaint do not involve any 2018 "communications issues" and her retaliation claims arising out of the February 2019 written reprimand were previously dismissed by the district court with prejudice. Accordingly, it is not apparent to this Court what relevance the identities of those complainants have to the issues remaining in this litigation. *See* Fed. R. Civ. P. 26(b)(1), (2)(C)(iii).

### 3. Interrogatory No. 8

Interrogatory No. 8 asks Defendant to "[s]tate whether there are any publications[, including newspapers, employee complaints or other documents,] that describe a hostile work environment in the DHS Behavioral Health Division." Pl.'s Mot. to Compel at 5. Among other objections, Defendant objected to Interrogatory No. 8 on grounds that it was

overly broad ("the Behavioral Health Division has multiple managers, supervisor, and lead employee positions, some of which are wholly unrelated to Plaintiff's employment") and "to the extent that it seeks information relating to third-party publications, such as newspapers, not generated by Defendant or in Defendant's possession or control." Pl.'s Mot. to Compel at 5. Subject to its objections, Defendant stated it was "unaware of any such publications regarding employees within Plaintiff's management and supervisory chain." Pl.'s Mot. to Compel at 5.

Plaintiff asserts that Interrogatory No. 8 "is narrowly tailored to the Behavioral Health Division" and "materially relates to the case given this case relates to discrimination and retaliation." Pl.'s Mot. to Compel at 5-6. Plaintiff additionally asserts that "Defendant has a Communications Department who collects news articles, through newspapers and local news, from across the state of Minnesota on a daily basis and distributes these news clips through an email to executive leadership and division level leadership." Pl.'s Mot. to Compel at 5; *see also* Pl.'s Mot. to Compel at 6 ("During this same timeframe there were articles published that included individuals who were suspended and/or left the Department due to discriminatory and retaliatory experiences."). Lastly, Plaintiff asserts that "Defendant did not state whether there were any complaints related to a hostile work environment that were initiated by Behavioral Health Division employees." Pl.'s Mot. to Compel at 6.

Defendant responds that Interrogatory No. 8 "seeks news articles from an unlimited timeframe"; "it does not generate, maintain, or control news articles"; and "Plaintiff has equal access to any articles and news reports that have been published and may search them

for herself." Def.'s Mem. in Opp'n at 5-6 (emphasis omitted). Defendant further responds that it "is unable to provide articles describing 'the hostile work environment,' because there is not a hostile work environment in the Behavioral Health Division." Def.'s Mem. in Opp'n at 6.

At the same time, Defendant acknowledges that its "Communications Department does circulate emails with hyperlinks to articles relating to [the Department of Human Services]." Def.'s Mem. in Opp'n at 6. Defendant states that, while it "does not have a searchable archived database of those emails or of the linked news articles," it "does have Word documents containing links and a short summary of articles circulated internally *from 2018 to the present*." Def.'s Mem. in Opp'n at 6. Defendant "has run searches of the summaries in the Word documents to identify any articles from 2018 to the present involving the Behavioral Health Division and a 'hostile' or 'toxic' work environment" and supplemented its production to include the five news articles that resulted from its search. Def.'s Mem. in Opp'n at 6.

As for any complaints of a hostile work environment by Behavioral Health Division employees, Defendant states it would be disproportionate to the needs of this case to determine whether any such complaints exist. Because its internal software does not have the capacity to sort by complaints of a hostile work environment, Defendant would first need to separate out the complaints of individuals in the Community Supports Administration, wherein the Behavioral Health Division is located. Def.'s Mem. in Opp'n at 8; *see* Decl. of Zecharias Hailu ¶¶ 3-5, 7 ECF No. 106. Next, Defendant "would . . . need to review the individual complaint forms (kept in paper files) or consult a long series

of organizational charts to determine which of the complainants worked in the Behavioral Health Division at the time of the complaint." Def.'s Mem. in Opp'n at 8; *see* Hailu Decl. ¶ 7. Defendant "would then have to review each individual complaint form in that subset to determine whether it alleges a hostile work environment." Def.'s Mem. in Opp'n at 8; *see* Hailu Decl. ¶ 7. Defendant estimates that it would take between 80 and 160 hours to complete such a review. Def.'s Mem. in Opp'n at 8; *see* Hailu Decl. ¶ 7. Defendant has supported this estimate with the declaration of its Equal Opportunity & Access Division director. *See generally* Hailu Decl.

First, it is not apparent to this Court that Plaintiff is bringing a hostile-work-environment claim. *See Jackson*, 2021 WL 1111075, at *3 n.6 ("[I]t is unclear whether Jackson also intended to raise a Title VII hostile-work-environment claim."); *see also* Joint Rule 26(f) Report at 2-3 (Plaintiff describing case as "being discriminated and retaliated against" in statement of the case); *cf. Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) ("To sustain a claim for hostile work environment, a plaintiff must show that (1) he or she is a member of a protected class; (2) he or she is subjected to unwelcome race-based harassment; (3) the harassment was because of membership in the protected class; and (4) the harassment affected a term, condition, or privilege of his or her employment. The workplace must be permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive." (quotation omitted)).

As best as this Court is able to tell, Plaintiff has brought claims for discrimination and retaliation based on a series of "discrete acts" rather than a claim "based on the cumulative effect of individual acts." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S.

12

101, 115 (2002); *see also id.* at 117; *Wallace v. Interbake Foods, LLC*, 973 F. Supp. 2d 1067, 1077 (D. S.D. 2013). "In granting the deference owed to pro se parties, [the court may not] assume the role of advocate for the pro se litigant." *Machen v. Iverson*, No. 11-cv-1557 (DWF/JSM), 2012 WL 566977, at *15 (D. Minn. Jan. 23, 2012) (quotation omitted), *report and recommendation adopted*, 2012 WL 567128 (D. Minn. Feb. 21, 2012); *see Bracken v. Dormire*, 247 F.3d 699, 705 (8th Cir. 2001) (Arnold, J., dissenting) ("Of course, a pro se pleading is not a magic hat out of which a court may pull any claim it thinks should have been advanced.").

While the Court can certainly understand describing a work environment in which acts of discriminatory and retaliatory conduct have allegedly occurred as hostile in the colloquial sense, claims of discrimination and retaliation are not equivalent to hostile-work-environment claims in the legal sense, making the relevance of the information sought in Interrogatory No. 8 highly questionable to the issues of whether Plaintiff *herself* experienced discrimination and retaliation. Given this questionable relevance and the burden of obtaining the requested complaints, the Court concludes that the employee-hostile-work-environment complaints sought by Plaintiff are disproportionate to the needs of this case.

The Court will, however, grant Plaintiff's motion in part and Defendant shall, to the extent it has not done so already, supplement its response to Interrogatory No. 8 to identify the five articles produced as a result of its search for news articles in its possession, custody, and control relating to the Behavioral Health Division and a "hostile" or "toxic" work environment.

Based on the foregoing, Plaintiff's motion is otherwise denied with respect to Interrogatory No. 8.

### 4. Interrogatory No. 10

Interrogatory No. 10 seeks information regarding "any charge, lawsuit, substantiated complaints, settlements or intent to sue has been filed against the Defendant by any Supervisor or Human Services Supervisor for race or any other discrimination from January 2017 to [the] present."   Pl.'s Mot. to Compel at 6.   Defendant objected to Interrogatory No. 10 "as overly broad and not proportional to the needs of the case."  Pl.'s Mot. to Compel at 6.   Among other things, Defendant stated that the "[Department of Human Services] is a large agency," with "multiple . . . divisions in which Plaintiff has never worked and which are wholly unrelated to Plaintiff's employment."   Pl.'s Mot. Compel at 6.   Defendant also stated the Behavioral Health Division, where Plaintiff is employed, "did not exist in 2017 or part of 2018" and this division itself "has multiple managers, supervisor, and lead employee positions, some of which are wholly unrelated to Plaintiff's employment."  Pl.'s Mot. to Compel at 6.   Subject to these and other objections, Defendant identified one individual in the "Community Supports Administration managers or supervisors within Plaintiff's management and supervisory chain from January 2017 to the present."  Pl.'s Mot. to Compel at 6-7.

Plaintiff asserts that Defendant has "self-defined [its] response based on the Plaintiff[']s supervisor chain[,] which is exceedingly narrow."  Pl.'s Mot. to Compel at 8. Plaintiff reiterates that she seeks information "relate[d] to the entire Minnesota Department of Human Services supervisory pool to establish the fact patten of discrimination and

retaliation of people of color in supervisory roles." Pl.'s Mot. to Compel at 7.

Defendant responds that Plaintiff "appears to be fishing for evidence about other supervisors' allegations of discrimination in an attempt to show that [its] explanations for the alleged adverse employment actions against her are mere pretext for intentional discrimination/retaliation." Def.'s Mem. in Opp'n at 10-11. According to Defendant, "other supervisors throughout [the Department of Human Services] who report to different supervisors than Plaintiff (and may never interact in any way with Plaintiff or her supervisors) are not similarly-situated" to Plaintiff. Def.'s Mem. in Opp'n at 11. Defendant also responds that "it would be unduly burdensome and disproportionate to the needs of this case" to respond to the interrogatory as written. Def.'s Mem. in Opp'n at 11. Defendant states that it would take "staff anywhere between 40 and 80 . . . hours[] just to determine a list of complainants" because its system cannot be searched for complaints by supervisors. Def.'s Mem. in Opp'n at 12. Rather, staff "would need to review the entire list of complaints in [the system], and compare the complainant name and date of the complaint to organizational charts to determine if, at the time the complaint was filed, the complainant was a supervisor." Hailu Decl. ¶ 9. Similarly, Defendant "does not have a database of charges, lawsuits, settlements, and intents to sue. The only available method . . . to determine whether a [Department of Human Services] supervisor has brought a discrimination charge, lawsuit, entered a settlement, or submitted an intent to sue would be to have the name of that supervisor to learn if any complaints have been made" and then "review the paper file of each complaint to see whether any of those items are documented in the paper file." Hailu Decl. ¶ 10.

15

The Court concludes that Interrogatory No. 10, which seeks any and all complaints of discrimination not just those related to racial discrimination and not just those of individuals who are similarly situated to Plaintiff runs counter to Rule 26(b)(1)'s core requirement that discovery be "relevant to any party's claim or defense."  Generally speaking, "[c]ourts have recognized that discovery, in the Title VII context, must be limited to the practices at issue in the case and, where an individualized claim of disparate treatment is alleged, the discovery of information concerning other employees should be limited to employees who are similarly situated to the [p]laintiff." *Onwuka v. Fed. Express Corp.*, 178 F.R.D. 508, 516-17 (D. Minn. 1997); *see also, e.g.*, *Farmers Ins. Exch. v. West*, No. 11-cv-2297 (PAM/JJK), 2012 WL 12894845, at *8 (D. Minn. Sept. 21, 2012) ("[M]ost courts that allow . . . discovery [of other incidents of discrimination] conclude that it should be limited by such factors as time, the type of action complained of, or the type of discrimination alleged."); *Jensen v. Astrazeneca LP*, No. 02-cv-4844 (JRT/FLN), 2004 WL 2066837, at *2 (D. Minn. Aug. 30, 2004) ("[D]iscovery of information related to prior claims of discrimination is properly limited to the employment practices and classes at issue in the particular case, the facility and people implicated in the allegations, and to a reasonable time period around the alleged discriminatory action."); *Burns v. Hy-Vee, Inc.*, No. 02-cv-254 (JRT/FLN), 2002 WL 31718432, at *2 (D. Minn. Nov. 21, 2002) ("Discovery, in the Title VII context, must be limited to the employment practices at issue in the case.").  Here, Plaintiff seeks complaints of any and all types of discrimination, not just for racial discrimination, which is the discriminatory conduct alleged to have taken place in this case.  The Eighth Circuit has held that it is not an abuse of discretion to limit

16

all-encompassing, every-allegation-of-discrimination discovery requests as overly broad. *See, e.g.*, *Sallis v. Univ. of Minnesota*, 408 F.3d 470, 478 (8th Cir. 2005) (citing favorably *Onwuka*, 178 F.R.D. at 516).

Moreover, in the Title VII context, the Eighth Circuit has described suitable individuals for comparison as those individuals who are "similarly situated in all relevant respects" and "have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000). Just because an individual is "on the same level of management,"—such as, for example, a supervisor— does not mean that he or she is similarly situated to the plaintiff when there is no shared supervisor. *See, e.g.*, *Beasley v. Warren Unilube, Inc.*, 933 F.3d 932, 938 (8th Cir. 2019) (employees "on same level of management" were not similarly situated to plaintiff where plaintiff "never show[ed] that he and any of these people shared the same supervisor, were subject to the same standards, or engaged in the same conduct"); *see also, e.g.*, *Evance v. Trumann Health Servs., LLC*, 719 F.3d 673, 678 (8th Cir. 2013) (employees with "different job titles and supervisors" not similarly situated); *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 956 (8th Cir. 2012) (employees "not valid comparators because they had different immediate supervisors from Bone and did not engage in the same conduct as Bone"). As such, information "relate[d] to the entire Minnesota Department of Human Services supervisory pool" is neither relevant nor proportional to the needs of this case, which concerns claims of racial discrimination in the Behavioral Health Division, located within Defendant's Community Supports Administration. *See* Fed. R. Civ. P. 26(b)(1), (2)(C)(iii).

17

Based on the foregoing, the Court will deny Plaintiff's motion with respect to Interrogatory No. 10.

### 5. Interrogatory No. 12

Interrogatory No. 12 requests "the name, qualifications, interview panel scores, and race of the individual who w[as] offered and accepted the Moving Home Minnesota position," which Plaintiff had been a finalist for. Pl.' Mot. to Compel at 7; *see* Second Am. Compl. at 11-12. Interrogatory No. 12 further requested "the individual's employment status before he or she was hired in the Moving Home Minnesota position" and to "[i]nclude if the individual was on any type of unpaid leave, if so, state the reason the individual was on leave." Pl.'s Mot. to Compel at 7. Defendant identified the individual, A.P., and provided the requested information, except that Defendant was "unaware of any interview panel scores" for the individual and did not include any leave information. Pl.'s Mot. to Compel at 7.

Plaintiff asserts that Defendant's response was incomplete due to the missing interview scores and leave information. Pl.'s Mot. to Compel at 8. In response, Defendant reiterates that it is unaware of any interview scores for A.P. Def.'s Mem. in Opp'n at 13. Defendant further responds that it "interpreted [Interrogatory No. 12] as requiring it to include information on the successful candidate's leave, in the event that this individual was on leave at the time of her hire for the Moving Home Minnesota Director position," and, "[b]ecause [A.P.] was not on leave at the time of her hire, [Defendant] did not include any information." Def.'s Mem. in Opp'n at 12. Defendant goes on to state, however, that Plaintiff subsequently propounded an additional interrogatory (Interrogatory No. 18)

18

inquiring whether A.P. "was placed on any type of employment leave, Expectation Letters, or discipline of any type while employed [with Defendant]," and the dates, reason, and timeframe for such leave. Def.'s Mem. in Opp'n at 13 (quotation omitted); *see also* ECF No. 96 at 8. While Defendant believes this subsequent interrogatory is untimely and exceeds the number of interrogatories permitted under the Pretrial Scheduling Order, Defendant has stated that it will respond to Interrogatory No. 18 as "a matter of fundamental fairness because Plaintiff, who is proceeding pro se, likely incorrectly thought she would elicit this information with Interrogatory No. 12 (which was timely served)."[3] Def.'s Mem. in Opp'n at 13.

Plaintiff's motion is denied in part with respect to Interrogatory No. 12 to the extent she seeks any interview panel scores for A.P. A party cannot be compelled to produce what it does not have. *See, e.g.*, *Edeh v. Equifax Info. Servs., LLC*, 291 F.R.D. 330, 337 (D. Minn. 2013) ("Here, Equifax maintains that it does not have the documents requested in Requests for Production Nos. 3 and 4. If Equifax does not have the documents in its possession, custody, or control, it cannot be compelled to produce them."); *see also Farmers Ins. Exch.*, 2012 WL 12894845, at *5 ("Of course, the Court cannot order any party to produce something in discovery that does not, in fact, exist.").

Plaintiff's motion is, however, granted in part to the extent Defendant has not yet responded to Interrogatory No. 18 and supplemented its response to Interrogatory No. 13 to include the responsive leave information.

---

[3] The Court appreciates the professionalism of counsel in this regard.

### 6. Interrogatory No. 13

Interrogatory No. 13 seeks hiring demographics for each position in the Behavioral Health Division from January 1, 2017 through the present, including the title of the position; the total number of applicants, categorized by race; and the race of the individual hired. *See* Pl.'s Mot. to Compel at 8. Defendant objected to Interrogatory No. 13 on grounds that it is "overly broad, unduly burdensome, and not proportional to the needs of this case." Pl.'s Mot. to Compel at 8. Defendant also objected to Interrogatory No. 13 as "not relevant to Plaintiff's claim regarding the Moving Home Director position," which is not located "within the Behavioral Health Division." Pl.'s Mot. to Compel at 8.

Plaintiff asserts that Defendant read Interrogatory No. 13 too narrowly by "assuming [it] relate[d] to the Moving Home Minnesota position." Pl.'s Mot. to Compel at 8. Plaintiff asserts that Interrogatory No. 13 "relates to the broader Behavioral Health Division and whether the Division is hiring people of color or if the result of the hiring process reflects discrimination." Pl.'s Mot. to Compel at 8-9. Defendant responds that, "[a]t present, there are more than 120 employees working in the Behavioral Health Division," and "[i]t would be unduly burdensome and irrelevant to an issue raised in the Second Amended Complaint for [Defendant] to delineate every single job title, the total number of applicants for each of the 120 positions, and the race of the individual hired – especially for a period of multiple years." Def.'s Mem. in Opp'n at 14. According to Defendant, "none of this hiring data has any probative value as to whether Plaintiff suffered unlawful discriminatory or retaliatory treatment years later based on her race (when a letter of expectations was issued to her because of communications issues or when she was not

20

offered the Moving Home Minnesota Division)." Def.'s Mem. in Opp'n at 14 (footnote omitted). Defendant has, however, "produce[d] to Plaintiff charts indicating [its] target percentages for hiring BIPOC (Black, Indigenous, People of Color) employees and supervisors as well as the actual percentages of BIPOC hires" based "upon data provided by employees who voluntarily self-report their race." Def.'s Mem. in Opp'n at 15 & n.9.

Plaintiff explains that she seeks hiring information beyond the Moving Home Minnesota Director position because such information goes to "whether [the Behavioral Health] Division is hiring people of color or if the result of the hiring process reflects discrimination." Pl.'s Mot. to Compel at 9. Such an argument more closely resembles a disparate-impact theory of employment discrimination, *see, e.g.*, *U.S. Equal Emp. Opportunity Comm'n v. Stan Koch & Sons Trucking, Inc.*, 557 F. Supp. 3d 884, 891 (D. Minn. 2021) ("Title VII of the Civil Rights Act of 1964 prohibits employment practices that are 'facially neutral but that fall more harshly on one group than another and cannot be justified by business necessity.'" (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993)), but, as best as this Court is able to tell, Plaintiff has alleged disparate treatment not disparate impact. *Cf. Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004) ("When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.").

Nor has Plaintiff sufficiently articulated how hiring demographics of positions within another department are relevant to her claim that she was discriminated against in

connection with the Moving Home Minnesota Director position. Plaintiff seeks hiring demographics regarding the Behavioral Health Division, but the Moving Home Minnesota Director position she was a finalist for is not located within the Behavioral Health Division. Def.'s Mem. in Opp'n at n.8; Ex. B at 34 to Ghreichi Decl., ECF No. 103-2. *Cf. LaCroix v. Sears, Roebuck, & Co.*, 240 F.3d 688, 694 (8th Cir. 2001) (employees having different positions in different departments were not similarly situated).

Based on the record before the Court, the relevance of the Behavioral Health Division's hiring demographics to the issues in this litigation is marginal at best. *See* Fed. R. Civ. P. 26(b)(1) (considering "the importance of the discovery in resolving the issues"). Further, having compared the burden of responding to Interrogatory No. 13 to the benefit such information may have to the claims asserted in this case, the information sought is disproportionate to the needs of this case.[4] *See id.* (consider "whether the burden or expense of the proposed discovery outweighs its likely benefit"). According, Plaintiff's motion is denied with respect to Interrogatory No. 13. *See* Fed. R. Civ. P. 26(b)(1), (2)(C)(iii).

### B. Document Requests

Plaintiff also seeks to compel Defendant to respond to two document requests: Document Request Nos. 5 and 6.

---

[4] That is not to say hiring demographics and statistical information are never relevant in an individual Title VII case, only that Plaintiff has not persuasively articulated the relevance of the requested information to the claims asserted in *this* case. *Cf., e.g., Easley v. Anheuser-Busch, Inc.*, 758 F.2d 251, 260-61 (8th Cir. 1985); *Craik v. Minnesota State Univ. Bd.*, 731 F.2d 465, 471 (8th Cir. 1984).

### 1. Document Request No. 5

Document Request No. 5 seeks "[a]ny and all diaries, calendars, journals, notes, receipts, or any other records, whether handwritten, electronically stored, or in other form, kept or taken by Defendant that describe the race of all suspended individuals in the . . . Behavioral Health Division between January 2017 and June 2021." Pl.'s Mot. to Compel at 9. Subject to a number of objections, Defendant answered "None." Pl.'s Mot. to Compel at 9.

Plaintiff asserts that Defendant has not responded to this request. Defendant "does not maintain lists of employee discipline by division." Decl. of Sean Tolefree ¶ 3, ECF No. 105. While Plaintiff may have thought otherwise or not be satisfied with Defendant's response that it does not have documents responsive to her request, that does not mean that Defendant has not complied with its obligation to respond. As stated above, a party cannot be compelled to produce what it does not have. *See Edeh*, 291 F.R.D. at 337; *Farmers Ins. Exch.*, 2012 WL 12894845, at *5. Moreover, to the extent Plaintiff asserts that Defendant should have "provide[d] all information as available" and responded to Document Request No. 5 with a list or documentation of all individuals who have been suspended in the Behavioral Health Division in lieu of the requested race information, such a request is considerably different in kind than the request Plaintiff in fact propounded.

Plaintiff's motion is denied with respect to Document Request No. 5.

### 2. Document Request No. 6

Document Request No. 6 seeks "[a]ny and all diaries, calendars, journals, notes, receipts, or any other records, whether handwritten, electronically stored, or in other form,

kept or taken by Defendant that identify and describe the hostile and toxic environment of the . . . Behavioral Health Division between January 2017-June 2021."  Pl.'s Mot. to Compel at 10.  Similarly, subject to a number of objections, Defendant again answered "None" this request.  Pl.'s Mot. to Compel at 10.  Plaintiff likewise asserts that Defendant has not responded to this request.

The Court will grant Plaintiff's motion in part with respect to Document Request No. 6 consistent with its ruling in regard to Interrogatory No. 8, and direct Defendant to supplement its response to Document Request No. 6, to the extent it has not done so already, to identify the five articles resulting from its search of article summaries involving the Behavioral Health Division and a "hostile" or "toxic" work environment.  *See supra* Section III.A.3.  Plaintiff's motion is otherwise denied as to Document Request No. 6. Again, it is not apparent to this Court that Plaintiff is asserting a hostile-work-environment claim, thereby creating considerable doubt as to the importance of the requested discovery in resolving the issues at the heart of this litigation, namely, whether Plaintiff experienced discrimination and retaliation.  *See supra* Section III.A.3.

### IV. COMPILING & COMPLIANCE MOTION

As best as this Court is able to tell, Plaintiff's motion is informative in nature.  The substance of Plaintiff's motion states in its entirety:

> The Plaintiff is compiling and complying with Rule 26(a) of the Federal Rules of Civil Procedure.  The confidential documents enclosed are from The Middle Management Association (MMA) and will be used in the case listed above. The documents were used by MMA to resolve and comply with their union responsibilities and to represent Plaintiff.

24

ECF No. 108.  Plaintiff's motion is accompanied by close to 500 pages of documents.  *See*

*generally* ECF Nos. 109 through 109-2.  Defendant did not respond to the motion.

Rule 26(a) of the Federal Rules of Civil Procedure identifies three different types of

disclosures: initial disclosures, expert disclosures, and pretrial disclosures.  Fed. R. Civ. P.

26(a)(1)-(3).  It is not clear from Plaintiff's motion which particular type of disclosure(s)

she intends these documents to serve as.  Moreover, it is not clear from Plaintiff's motion

what sort of relief she wants from the Court.  *See* Fed. R. Civ. P. 7(b)(1)(C) (a motion must

"state the relief sought").  As best as this Court is able to tell, Plaintiff's motion is intended

to inform the Court that she is in the process of compiling documents in order to fulfill her

disclosure obligations under Rule 26(a).

As there is no relief sought, the Court will deny Plaintiff's motion without prejudice.

In doing so, the Court is not in any way commenting on the documents accompanying the

motion or the sufficiency of any disclosure made under Rule 26(a).

## V. ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. Plaintiff's "Motion to Compel," ECF No. 94, is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

2. Defendant shall supplement its responses as outlined herein **within 14 days from the date of this Order**.

3. Each party shall be responsible for its own costs and attorney fees.  *See* Fed. R. Civ. P. 37(a)(5)(C).

4. Plaintiff's "Proposed Motion to Compel," ECF No. 98, is **ADMINISTRATIVELY TERMINATED**.

5. Plaintiff's "Motion of Compiling with Complying Requests," ECF No. 108, is **DENIED WITHOUT PREJUDICE**.

6. All prior consistent orders remain in full force and effect.

7. Failure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.


Dated: April___27___, 2022                           _____*s/ Tony N. Leung*_____
                                                      Tony N. Leung
                                                      United States Magistrate Judge
                                                      District of Minnesota


                                                      *Jackson v. Minnesota Department of*
                                                      *Human Services*
                                                      Case No. 20-cv-749 (KMM/TNL)