## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Deidre Sherell Jackson, | Case No. 0:20-cv-749 (KMM/TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| Minnesota Department of Human Services, | |
| Defendant. | |

This matter is before the Court on Defendant Minnesota Department of Human Services' (MNDHS) Motion for Summary Judgment. [ECF No. 116]. MNDHS argues that there are no disputes of any facts material to *pro se* Plaintiff Deidre Jackson's employment discrimination claims and therefore they are entitled to judgment as a matter of law as to all of her claims. Following a continuance to allow time to comply with an order to compel discovery, the Court cancelled oral argument and took the motion under advisement on the papers. [ECF No. 148]. For the reasons that follow, the Court grants the motion as to several claims and denies it as to one. Specifically, the Court concludes that material facts are in dispute related to Ms. Jackson's failure-to-promote claim, but not as to her claims regarding the existence of a hostile work environment, retaliation, or a due process violation.

I.      **Procedural Posture**

Ms. Jackson, an African-American woman, started working for MNDHS in 2005 most recently as a supervisor in the adult mental health division of the community supports administration. In her *pro se* complaint, Ms. Jackson alleges numerous instances in which MNDHS has discriminated against her on the basis of race and violated her rights. In an Order dated March 23, 2021, District Judge Eric Tostrud dismissed several claims, including a challenge to a written reprimand and other discipline from February 2019 related to her alleged misuse of a work cell phone and any claim related to color discrimination.[1] [ECF No. 70]. Because she is a *pro se* litigant, her remaining claims are construed liberally. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). Those claims include: (1) MNDHS discriminated against her by failing to promote her; (2) she was subjected to a hostile work environment because of her race; (3) MNDHS retaliated against her for protected activity; and (4) she was denied due process when she was placed on a one-day suspension. The parties each provide lengthy factual statements regarding Ms. Jackson's professional background and her time at DHS. The Court does not restate that complete narrative here, as many of the facts and many aspects of the timeline are simply not in dispute. Instead, the Court highlights only facts that are critical to assessing each claim.

---

[1] This case was subsequently reassigned to the undersigned District Judge on December 29, 2021.

II.     **Analysis**

A.  **Standard and Applicable Law**

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the burden of showing that there are no disputed material facts. *Catrett*, 477 U.S. at 322; *Mems v. City of St. Paul, Dep't of Fire & Safety Servs.*, 224 F.3d 735, 738 (8th Cir. 2000). A fact is "material" only if its resolution could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In examining a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences therefrom in that party's favor. *Graves v. Ark. Dep't of Fin. & Admin.*, 229 F.3d 721, 723 (8th Cir. 2000). The nonmoving party cannot resist judgment on mere allegations or denials, but must show through admissible evidence there are specific facts which create a genuine dispute for trial. *Anderson*, 477 U.S. at 256; *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A litigant bringing an action *pro se* "is entitled to the benefit of a liberal construction of [her] pleadings," but Rule 56 "remains applicable." *Sisney v. Kaemingk*, 886 F.3d 692, 697 (8th Cir. 2018).

Title VII of the Civil Rights Act makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Ms. Jackson alleges that she was subjected to several unlawful employment actions under Title VII because of her race. She also asserts that she was denied due process when she received a one-day suspension.

"A plaintiff may prove unlawful racial discrimination through either direct or circumstantial evidence." *Lucke v. Solsvig*, 912 F.3d 1084, 1087 (8th Cir. 2019). Where the plaintiff's evidence is only circumstantial, "she must proceed under the framework laid out in *McDonnell Douglass Corp. v. Green*." *Id.* (citing *McDonnell Douglass Corp. v. Green*, 411 U.S. 792 (1973)). Under the *McDonnell-Douglas* framework, the plaintiff must first establish a prima facie case by providing sufficient circumstantial evidence to "giv[e] rise to an inference that she has been intentionally discriminated against because of her race." *Id.* Thereafter, the defendant "must show a 'legitimate, non-discriminatory reason' for the challenged conduct." *Id.* (quoting *Young v. Builders Steel Co.*, 754 F.3d 573, 577–78 (8th Cir. 2014)). If the defendant articulates such a reason, the burden returns to the plaintiff to show that the defendant's reason is pretextual "and that discrimination was the real reason." *Id.* at 1088 (quotation omitted).

### B.  Failure to Promote

The Court first turns to Ms. Jackson's failure-to-promote claim. In August of 2019, Ms. Jackson applied for a job as director of a specific program, a federal demonstration project designed to help Minnesotans move from institutions to their own homes in the community. She was one of only three candidates to receive a second interview, and the hiring committee was considering offering the position to her. However, an internal reference check conducted by HR revealed that Ms. Jackson had received a written reprimand, that she owed money to the State for cell-phone overages, and that her performance reviews indicated concerns about her communications style. These were identified to the hiring supervisor by HR as "red flags," and they led to the hiring team conducting a new round of interviews.

Soon thereafter, the committee interviewed another internal candidate, Ms. P, a white woman. They decided to conduct a similar reference check for Ms. P, and HR informed the hiring manager that there were no "red flags" in her background check. However, this was simply untrue. Ms. P had been placed on administrative leave as part of a conduct investigation for eight months, only being returned to work a few months before applying for the new job. [ECF 132-4 at 32–33]. Ms. P was initially demoted for communications that violated the Respectful Workplace policy, but that demotion was changed to a written reprimand. [*Id.*].

Ms. Jackson argues MNDHS declined to promote her to the Director position due to her race. To establish a prima facie failure-to-promote case, Ms. Jackson must show that "(1) she is in a protected class; (2) she was qualified for an open position; (3) she was denied that position; and (4) the [employer] filled the position with a person not in the same protected class." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011) (quoting *Dixon v. Pulaski County Special Sch. Dist.*, 578 F.3d 862, 867–68 (8th Cir. 2009)). After careful review, the Court finds that she has made the requisite showing as to all four components such that the Defendant is not entitled to summary judgment on her failure-to-promote claim for failure to establish a prima facie case.

MNDHS argues that Ms. Jackson fails to meet her initial burden to establish a prima facie case because she was not similarly situated to Ms. P, the white woman who received the promotion. MNDHS specifically mentions that Ms. P "had done a 'Money Follows the Person' research project in graduate school that particularly qualified her" for the promotion. [ECF No. 118 at 11, 15–16]. However, the Eighth Circuit "has squarely rejected the proposition that a plaintiff must prove her *relative* qualifications to meet her prima facie burden." *Id.* at 1047 (citing, among other cases, *Turner v. Honeywell Federal Mfg. & Techs, LLC*, 336 F.3d 716, 721–22 (8th Cir. 2003) (applying same standard to failure-

to-promote claim)).[2] "The burden of establishing a prima facie case of disparate treatment is not onerous," and Ms. Jackson has met that burden here. *Torgerson*, 643 F.3d at 1047 (quotation omitted).

Even were Ms. Jackson required to establish that she was "similarly situated" to Ms. P, there is ample evidence in the record to suggest Ms. Jackson was as qualified or even more qualified. While Ms. P has a master's degree, Ms. Jackson has two. And a cursory review of Ms. Jackson's application for the Director position and curriculum vitae reveals that she has a wide array of practical experience within the DHS system that could perfectly prepare her for the job. This is particularly relevant where the missing qualification MNDHS attempts to rely upon to suggest that Ms. Jackson does not meet her prima facie case is not actual experience, but a single research project from graduate

---

[2] Some failure-to-promote cases have used language suggesting that to establish the fourth element of a prima facie case, the plaintiff must show the person who received the promotion is "similarly situated" or "similarly qualified" to the plaintiff. However, the Eighth Circuit has clarified that "requir[ing] such proof of relative qualifications at the prima facie stage of a case would undermine the *McDonnell Douglas* framework and collapse its three-step analysis into a single initial step at which all issues would be resolved." *Turner*, 336 F.3d at 722 (quoting *Hawkins v. Anheuser-Busch Inc.*, 697 F.2d 810, 813–14 (8th Cir. 1983)). Other cases undermine the notion that the plaintiff's prima facie case requires proof of similar relative qualifications. *E.g.*, *Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 937 (8th Cir. 2007) ("four similarly situated employees, not part of the protected group, were promoted instead."); *Culpepper v. Vilsack*, 664 F.3d 252, 257 (8th Cir. 2011) (same); *Turner*, 336 F.3d at 722 (discussing "the variations in the phrasing our cases have employed in discussing the fourth prong of a prima facie case" and concluding that the cases cited by opinions employing the "similarly qualified" language "do not adopt that phrase, nor do they intimate that meaning").

school. The simple fact that the hiring committee was impressed by something they learned in their interview of Ms. P cannot make it a qualification that Ms. Jackson lacks.

Having found that Ms. Jackson meets her prima facie burden, the ball shifts to MNDHS to put forth a legitimate, non-discriminatory reason for the employment action. MNDHS asserts that it did not offer the promotion to Ms. Jackson because she "had a history of communication issues documented in multiple performance reviews, owed DHS more than $7,000 in data plan overages, and was no longer allowed the use of a state-issued cell phone." [ECF No. 118 at 16]. Defendant asserts that it gave the promotion to Ms. P because her performance reviews "showed no evidence of performance issues" and because the research project she did in graduate school "aligned closely with the responsibilities" of the position.[3] [*Id.* at 9–10]. And MNDHS supported this non-discriminatory reason for its employment decision with evidence. [ECF No. 122 ¶ 4]. Fewer documented performance issues and perceived superior qualifications are both legitimate, non-discriminatory reasons for a promotion decision. *Turner*, 336 F.3d at 723; *Barnhardt v. Open Harvest Co-op.*, 742 F.3d 365, 372 (8th Cir. 2014). Accordingly, MNDHS has met its likewise "not onerous" burden. *Floyd v. State of Mo. Dep't of Soc. Servs.*, 188 F.3d 932, 936 (8th Cir. 1999).

---

[3] MNDHS also notes that when Ms. P started in the director position she "*only earned $6,884.80 more per year* more [sic] than Plaintiff." [ECF No. 118 at 10 (emphasis in original)]. While true, MNDHS does not explain the relevance of this information. It may limit the damages Ms. Jackson can recover if she is successful at trial, but it does not suggest that the Director position would not have been a promotion for her.

The burden now returns to Ms. Jackson to show that MNDHS's stated reasons for promoting Ms. P over her—that Ms. P was more qualified and had no communication issues—are merely pretextual. Generally, a plaintiff may show that an employer's proffered reason is pretext for discrimination by showing either that it has no basis in fact, or that an illegitimately discriminatory motivation is more likely. *Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 878 (8th Cir. 2014); *see also Jones v. National American University,* 608 F.3d 1039, 1047 (8th Cir. 2010) (finding that employee presented sufficient evidence to conclude that the employer's proffered reasons for not promoting her, reasons which shifted over time, were unworthy of credence). "In either case, the plaintiff must point to enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive." *Barnhardt*, 742 F.3d at 371 (quotation marks omitted). Relying on various exhibits in the record, Ms. Jackson attacks MNDHS's reasons both ways. The Court agrees that there is a dispute as to the material facts regarding whether the proffered reasons are pretextual, rendering summary judgment inappropriate.

### 1. Performance Reviews

Ms. Jackson first argues that her performance reviews did not in fact document a history of communication issues. The Court agrees that, to the extent that Ms. Jackson's performance reviews note communication concerns, there is no meaningful difference between hers and Ms. P's. The ratings for the "Communication/Interpersonal Skills" sections of Ms. Jackson's 2016, 2017, and 2018 performance reviews were all "meets

standards." [ECF No. 124-5 at 2; ECF No. 143-6 at 3; ECF No. 132-2 at 31–32]. The "Partner Relationship Management" section of the 2016 performance review describes an instance in which Ms. Jackson spoke to one of her team members "in a tone that could've been perceived as negative." [ECF No. 124-5 at 3]. The same comment also states, however, that Ms. Jackson's team members "have voiced their support" and "expressed being happy with how the team is running," as well as the reviewer's note that the perceived negative tone was not intended and does not appear to be a pattern of behavior. [ECF No. 124-5 at 3]. The comments in her 2017 review note that "[a]t times, Deidre holds people to a level of scrutiny in understanding what she means. . . . This can lead to hard feelings on both sides." [ECF No. 132-2 at 32].

While Ms. P's performance reviews between 2015 and 2017 rate her communication and interpersonal skills as "meets" or "above expectations," one notes that the reviewer had "seen where [Ms. P's] frustration at time gets the best of her. . . . I'm not sure she always sees how her attitude effects [sic] those around her[.]" [ECF No. 127 at 13]. Another reviewer comments that Ms. P "has a very strong personality which at time [sic] is reflected in her communication style" and she will have more impact and growth "the more she continues to moves [sic] her energy towards 'positive' influencing." [ECF No. 127 at 19]. To the extent that the comments in Ms. Jackson's 2016 and 2017 performance reviews would constitute "red flags," the Court finds that a

10

reasonable jury could conclude the comments in Ms. P's reviews would have been as well..[4]

The substance of Ms. P's written reprimand also constitutes evidence from which a reasonable jury could conclude that MNDHS's purported reason for choosing to promote Ms. P over Ms. Jackson—that Ms. Jackson had history of communication issues and Ms. P did not—was a pretext for discrimination. Ms. P's reprimand states that it was based on, but not limited to, speaking "in raised [sic] voice with a harsh tone to employees telling them to shush or shut it," speaking to an employee "in a manner described as negative and degrading," telling "an employee to stop and to shut it," and "exhibit[ing] eye rolling and sounds of exasperation towards or about employees" on multiple occasions. [ECF No. 124-27 at 1].

MNDHS highlights that in Ms. Jackson's 2018 performance review, the reviewer commented that "[c]oncerns have been expressed from team members in the Division, from others in the Agency and from external stakeholders on the [sic] Deidre's communication style feeling to them to be very disrespectful." [ECF No. 118 at 3; ECF No. 124-6]. However, no further elaboration was given in this or any other section of the

---

[4] Further, to the extent that the subjective language used in the comments in Ms. Jackson's performance reviews could be said to be more critical than those used in Ms. P's, Ms. Jackson has brought evidence supporting her argument that this is because her communication and conduct are more likely to be scrutinized and criticized than white employees. In her 2017 performance review, the supervisor comments that Ms. Jackson "has had to deal with racism and unreasonable expectations (due to racism) from team members, others in the agency and partners in her daily work." [ECF No. 132-2 at 33].

review,[5] and the reviewing supervisor gave a "meets expectations" rating for this category, which is defined in part as "consistently meet[ing] expectations" in communicating and "convey[ing] information . . . in a way that is respectful." [ECF No. 124-6]. The Court finds that this comment does not entitle MNDHS to summary judgment on Ms. Jackson's failure-to-promote claim. It is vague and unsupported, and it is contradicted by the "meets expectations" rating. Therefore, it would not prevent a fact finder from concluding that MNDHS's contention that it did not offer Ms. Jackson the promotion due to "a history of communication issues documented in multiple performance reviews" was a pretext for discrimination.

## 2. Disciplinary Records

MNDHS argues that the Human Resources employee reported "red flags" in Ms. Jackson's file in part because she found a written reprimand from February 2019 based on use of state property. MNDHS concedes that, while the Human Resources employee reported no "red flags" for Ms. P, Ms. P did in fact have a written reprimand for violating respectful workplace policies from August 2019. Defendant argues,

---

[5] Indeed, there are only three sentences of comments throughout the entirety of Ms. Jackson's 2018 performance review, one of which is "Deidre has worked for the organization for over 12 years." [ECF No. 124-6]. All of the other performance reviews before the Court, for both employees, contain three or more sentences in nearly every comment section—often entire paragraphs are dedicated to explaining the reviewer's rating and detailing specific circumstances or examples. This different in treatment is not inconsistent with a finding of pretext.

however, that this was due to a "clerical error" and is not evidence of discriminatory motive. The Court disagrees that this is beyond factual dispute in this case.

MNDHS emphasizes the intent of the Human Resources employee and points to the affidavit in which she states that she did not see Ms. P's written reprimand when reviewing her file. [ECF No. 123 ¶ 4]. What is less clear is the extent to which decision makers within MNDHS knew of the reprimand, and whether it was overlooked throughout the hiring process inadvertently or intentionally. Indeed, there is nothing in the record that suggests that the decision makers were unaware of Ms. P's eight-month investigative leave or the sanction that ultimately resulted. Only one member of the hiring panel—an Assistant Commissioner at MNDHS--provided a declaration, and it was silent as to whether he or other members of the committee were aware of Ms. P's lengthy leave or ultimate discipline. [ECF No. 122]. No decision maker attested that they were unaware of Ms. P's disciplinary background when they decided to offer her the job. Overall, though, consideration of Ms. Jackson's written reprimand and not Ms. P's is clearly unfair; whether it was an honest mistake or evidence of discrimination is a question of material fact that cannot be decided on summary judgment.[6] Such disparate treatment, in the absence of any legitimate explanation, could support a factfinder concluding that that MNDHS's proffered reason for denying Ms. Jackson the promotion

---

[6] The Court also notes that MNDHS has not suggested that it took any action to remedy the alleged mistake after it was discovered.

is pretextual. *Dixon*, 578 F.3d at 869 ("[A]n employer's misjudgment of an employee's qualifications may be probative of whether the reasons articulated for an employment decision were merely pretexts for discrimination." (quotation omitted)). Whether MNDHS was aware of Ms. P's communication issues and seemingly serious reprimand when making the hiring decision is a question of material fact.

### 3. Qualifications

As another non-discriminatory justification for promoting Ms. P over Ms. Jackson, MNDHS argues that Ms. P was more qualified for the position than Ms. Jackson. Defendant asserts that Ms. P "had experience with county authorization services as well as home and community-based services, while Plaintiff's work experience was focused on" healthcare policy and billing procedures. [ECF No. 118 at 15–16]. This argument is unavailing for several reasons. First, these experiences were available to the hiring supervisor from the beginning, yet Ms. P was not among the five candidates chosen for the first round of interviews, while Ms. Jackson was selected for first and second round interviews. [ECF No. 124-20]. Presumably for this reason, MNDHS also argues that it was only during Ms. P's interview that the hiring supervisor "learn[ed] that Ms. P had completed an MFP ("Money follows the Person") research project in graduate school that aligned closely with the responsibilities of the Moving Home position." [ECF No. 118 at 9–10]. However, MNDHS fails to explain how the research project aligns with the director position or otherwise makes MS. P more qualified for the position than Ms. Jackson. It is

difficult to credit that lack of a similar research project in graduate school was a basis for not promoting Ms. Jackson, even though it has now been highlighted as one of the things that the hiring committee liked about Ms. P

Additionally, Ms. Jackson offers evidence of the unique ways in which her own experience arguably makes her more qualified than Ms. P, even with Ms. P's research project weighed in the comparison. [*E.g.*, ECF No. 131 at 20–21]. Included among the features of Ms. Jackson's background is the fact that Ms. Jackson had direct experience working with an earlier version of the program that became Moving Home. A reasonable jury could conclude that MNDHS's conclusory assertion that on its own, a research project from more than six years prior and not mentioned on any application materials not only compensates for the hiring supervisor's reasons to not select Ms. P for an initial interview, but rendered her more qualified than Ms. Jackson, is simply insufficient to overcome all of the aforementioned evidence that illegitimate discrimination "more likely motivated [MNDHS's] action." *Fiero*, 759 F.3d at 878. This remains a question of fact for the jury. For these reasons, the Court denies summary judgment as to Ms. Jackson's failure-to-promote claim.

### C. Hostile Work Environment

Being subjected to a hostile work environment or subjected to ongoing harassment is actionable under Title VII where it is "sufficiently severe or pervasive to alter the conditions of [the employee's] employment and create[s] an abusive working

environment." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (quotations omitted, first alteration changed from original). It is unclear whether Ms. Jackson intends to raise a hostile work environment claim. Not only is no such claim clearly identified in her second amended complaint, but she did not allege the existence of such an environment in her complaint with the EEOC. [ECF No. 124-31]. However, even were this claim clearly raised and exhausted, the Court finds that MNDHS is entitled to summary judgment.

To sustain a prima facie case for a racially hostile work environment, "a plaintiff must show that (1) he or she is a member of a protected class; (2) he or she is subjected to unwelcome race-based harassment; (3) the harassment was because of membership in the protected class; and (4) the harassment affected a term, condition, or privilege of his or her employment." *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quotation omitted). To determine whether an environment is hostile, courts consider "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

Here, the racially-charged conduct alleged does not meet the substantial threshold required to sustain a hostile work environment claim. Ms. Jackson alleges that she is subjected to more scrutiny, afforded less credibility and flexibility, and at times denied

opportunities because of her race. While she has brought evidence to support some of her allegations, Title VII is violated based on a hostile work environment "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]" *Harris*, 510 U.S. at 21 (citations and quotations omitted). The work environment Ms. Jackson alleges, though taken as true for summary judgment purposes, does not meet the high threshold required by the caselaw to show a prima facie hostile work environment claim. *Compare Woodland v. Joseph T Ryerson & Son, Inc.*, 302 F.3d 839, 843–44 (8th Cir. 2002) (holding that co-workers' racial epithets, obscene gestures, circulation of fascist message, and racist graffiti were insufficient), *Smith v. Fairview Ridges Hosp.*, 625 F.3d 1076, 1086–87 (8th Cir. 2010) (holding that racially motivated picture and comments and references to fried chicken, ghettos, "black aides," and runaway slaves insufficient), *and Gipson v. KAS Snacktime Co.*, 171 F.3d 574, 578–80 (8th Cir. 1999) (holding that racially offensive comments and a partially fabricated or exaggerated written reprimand were insufficient), *with Ways v. City of Lincoln*, 871 F.2d 750, 754–56 (8th Cir. 1989) (holding that employee continually subjected to racial slurs, comments, jokes and cartoons throughout 17-year career was sufficient to sustain a hostile work environment claim). Against this legal landscape, the Court concludes that Ms. Jackson has not made the required showing and summary judgment is appropriate on her hostile-work-environment claim.

### D. Retaliation

Retaliation claims are also analyzed under the McDonnell-Douglas burden-shifting framework. *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 818 (8th Cir. 1998). To support a prima facie case for retaliation under Title VII, a plaintiff must show "she filed a charge of discrimination or engaged in some other protected activity, that the defendant took an adverse employment action against her, and that there was a causal link between the filing of the discrimination charge and the adverse employment action." *Kipp v. Missouri Highway & Transp. Comm'n.*, 280 F.3d 893, 896 (8th Cir. 2002).

Ms. Jackson does not clearly identify specific adverse employment actions taken in retaliation for specific protected activities. Construing Ms. Jackson's filings liberally, she appears to allege that her protected activities include filing a complaint with the EEOD in September of 2019 and filing a complaint with the EEOC in February of 2020. She alleges many adverse employment actions were taken in retaliation for one or more of these activities. However, much of what is attributed to retaliation does not constitute an adverse employment action. First, many of the alleged adverse employment actions—such as the denial of her right to telework and the requirement that she repay past phone charge—occurred before the protected conduct. Similarly, for the adverse employment actions alleged to have occurred after the protected activities, Ms. Jackson offers no evidence from which a reasonable jury could conclude that they are casually connected. The Court concludes that, there is no genuine dispute of material facts with respect to

Ms. Jackson's prima facie claim of retaliation, and therefore, MNDHS is entitled to summary judgment on this claim.

### E.  Denial of Due Process Under *Loudermill*

Finally, Ms. Jackson argues that she was denied her due process rights to a hearing prior to her December 27, 2019, one-day suspension pursuant to *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). However, she acknowledges that she received a hearing on January 2, 2020. As MNDHS correctly points out, there is no constitutional right to a hearing prior to a suspension. *Gilbert v. Homar*, 520 U.S. 924, 929–35 (1997). Moreover, even if the delay of her hearing could give rise to a claim, the Court finds that Ms. Jackson waived this issue by settling "all claims and/or disputes" relating to her one-day suspension.  In fact, the suspension was rescinded as part of the agreement. [ECF No. 124-18]. For these reasons, summary judgment is appropriate on Ms. Jackson's due process claim.

## III.   Order

For the foregoing reasons, **IT IS HEREBY ORDERED that:** Minnesota Department of Human Services' Motion for Summary Judgment [ECF No. 116] is **GRANTED IN PART and DENIED IN PART**. The motion is **GRANTED** as to Ms. Jackson's retaliation, hostile work environment, and due process claims; and the motion is **DENIED** as to Ms. Jackson's failure-to-promote discrimination claim.

By a separate letter, Ms. Jackson shall be referred to the Federal Bar Association's

*Pro Se* Project for a potential consultation with a volunteer attorney.


Date: October 4, 2022                                         _s/ Katherine Menendez_
                                                             Katherine Menendez
                                                             United States District Judge